```
                    UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF WEST VIRGINIA
                            AT CHARLESTON


BRENDA ANDERSON, Administratrix of the Estate
of Kimberly Anderson,

          Plaintiff,

v.                                      Civil Action No. 2:19-cv-00198

NATHANIEL BARKLEY, individually and in his
official capacity as a correctional officer of
the West Virginia Division of Corrections and
Rehabilitation;

THE WEST VIRGINIA DIVISION OF CORRECTIONS AND
REHABILITATION, an agency of the State of West
Virginia;

JAMES E. JAMISON, individually and in his
official capacity as a correctional officer of
The West Virginia Division of Corrections and
Rehabilitation;

DEVIN M. BROWN, individually and in his
official capacity as a correctional officer of
The West Virginia Division of Corrections and
Rehabilitation;

SGT. ROBERTA M. EVANS, individually and in her
official capacity as a correctional officer of
The West Virginia Division of Corrections and
Rehabilitation;

SGT. MARK A. GOODMAN, individually and in his
official capacity as a correctional officer of
The West Virginia Division of Corrections and
Rehabilitation;

ADMINISTRATOR DEBRA MINNIX, individually and
in her official capacity as administrator of
The West Virginia Division of Corrections and
Rehabilitation; and

JOHN DOE, unknown person or persons, individually
and in their official capacity as correctional
officers of the West Virginia Division of Corrections
and Rehabilitation,
```

Defendants.

KARA FALKNER,

      Plaintiff,

v.                                                 Civil Action No. 2:19-cv-00199

NATHANIEL BARKLEY, individually and in his
official capacity as a correctional officer of
the West Virginia Division of Corrections and
Rehabilitation;

THE WEST VIRGINIA DIVISION OF CORRECTIONS AND
REHABILITATION, an agency of the State of West
Virginia;

JAMES E. JAMISON, individually and in his
official capacity as a correctional officer of
The West Virginia Division of Corrections and
Rehabilitation;

DEVIN M. BROWN, individually and in his
official capacity as a correctional officer of
The West Virginia Division of Corrections and
Rehabilitation;

SGT. ROBERTA M. EVANS, individually and in her
official capacity as a correctional officer of
The West Virginia Division of Corrections and
Rehabilitation;

SGT. MARK A. GOODMAN, individually and in his
official capacity as a correctional officer of
The West Virginia Division of Corrections and
Rehabilitation;

ADMINISTRATOR DEBRA MINNIX, individually and
in her official capacity as administrator of
The West Virginia Division of Corrections and
Rehabilitation; and

JOHN DOE, unknown person or persons, individually
and in their official capacity as correctional
officers of the West Virginia Division of Corrections
and Rehabilitation,

      Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

Pending are defendant Devin M. Brown's motions to dismiss filed in the related above-styled cases on January 31, 2020 (Mot. to Dismiss, <u>Anderson v. Barkley</u>, No. 2:19-cv-00198, ECF No. 47; Mot. to Dismiss, <u>Falkner v. Barkley</u>, No. 2:19-cv-00199, ECF No. 53).

I.   Background

The original plaintiffs, Kimberly Anderson[1] and Kara Falkner, initiated separate civil actions in Kanawha County circuit court against defendants the West Virginia Division of Corrections and Rehabilitation ("WVDCR"), Nathaniel Barkley, in his individual capacity and official capacity as a WVDCR correctional officer, and other, unnamed WVDCR correctional officers, individually and in their official capacities.  <u>See</u> <u>Anderson</u>, ECF No. 1 at 2; <u>Falkner</u>, ECF No. 1 at 2.  Both actions were removed to this court on March 21, 2019.  <u>See</u> <u>Anderson</u>, ECF No. 1; <u>Falkner</u>, ECF No. 1

Anderson and Falkner both filed amended complaints on November 5, 2019, adding as defendants five additional WVDCR

---

[1] Brenda Anderson, the administratrix of the estate of the original plaintiff, Kimberly Anderson, was substituted as the plaintiff in No. 2:19-cv-00198 following Kimberly's death.  <u>See</u> <u>Anderson</u>, ECF No. 122.

officers, including Devin M. Brown and James E. Jamison, in both their individual capacity and in their official capacity as WVDCR correctional officers.[2]  See Anderson, No. 2:19-cv-00198, ECF No. 47 (hereinafter, "AAC") ¶¶ 5-9; Falkner No. 2:19-cv-00199, ECF No. 53 (hereinafter, "FAC") ¶¶ 5-9.

In their amended complaints, the plaintiffs allege the following.  Anderson and Falkner were female inmates residing at Tygart Valley Regional Jail ("Tygart Valley") in Randolph County, West Virginia.  See AAC ¶ 2; FAC ¶ 2.  Since it opened in 2005, there has existed at Tygart Valley a "continuing practice and pattern of sexual harassment, sexual abuse and sexual exploitation visited upon female residents at the hands of correctional staff and deliberate indifference thereto."  AAC ¶ 16; accord FAC ¶ 16.  Defendant Barkley, in particular, had a pattern of "act[ing] inappropriately with the female inmates at [Tygart Valley], including committing sexual assault, sexual harassment, sexual abuse, sexual exploitation, and other illegal, threatening, or oppressive behavior."  AAC ¶ 19; FAC ¶ 19.  Both Anderson and Falkner allege that Barkley "sexually assaulted [them], sexually harassed [them], sexually abused

---

[2] Two other civil actions by different plaintiffs allege similar claims against defendant Barkley and employees of WVDCR.  See Haney v. Barkley, No. 2:19-cv-00200; Smith v. Barkley, No. 2:19-cv-00201.  These two cases have been dismissed.

[them], threatened [them] and oppressed [them] under threat of retaliation" on multiple occasions.  AAC ¶ 25; FAC ¶ 25; see AAC ¶¶ 26-27.

Anderson and Falkner allege that other WVDCR officers were aware of Barkley's conduct.  For instance, Barkley had previously been reprimanded by his supervisors for engaging in this kind of conduct with female inmates.  See AAC ¶ 22; FAC ¶ 22.  And, Barkley had been removed from supervising female inmates in certain areas of Tygart Valley because of this conduct, but he eventually returned to working there.  See AAC ¶¶ 23-24; FAC ¶¶ 23-24.  Further, in some instances, Barkley engaged in this conduct "openly in front of other officers," including defendant Brown.  AAC ¶ 20; accord FAC ¶ 20.

On April 1, 2017, Defendants Brown and Jamison were "sitting at the desk in the booking area and talking with . . . Barkley," when Barkley ordered Anderson and Falkner to enter a laundry storage room with him.  AAC ¶ 31; accord FAC ¶ 29; see AAC ¶ 28; FAC ¶ 26.  The laundry storage room did not have surveillance cameras.  See AAC ¶¶ 28-29; FAC ¶¶ 26-27.  In the laundry storage room, Barkley "cornered [Anderson] and placed her hand on his crotch area on the outside of his pants," AAC ¶ 30; accord FAC ¶ 28, while Falkner "was made to watch" FAC ¶ 28.  Barkley then told Anderson and Falkner "to kiss and

perform sexual acts on each other."  AAC ¶ 30; <u>accord</u> FAC ¶ 28.
Barkley then "put his hand down [Anderson]'s pants and inserted
his finger into her vagina."  AAC ¶ 30.

Brown and Jamison both "observed . . . Barkley remain
in the laundry storage room with the female inmates for
approximately 27 seconds."  AAC ¶ 32; <u>accord</u> FAC ¶ 30.  After 27
seconds, "Jamison called out for . . . Barkley to return to the
booking desk."  AAC ¶ 32; <u>accord</u> FAC ¶ 30.  After he had left
the laundry storage room, Barkley tried to re-enter while
Anderson and Falkner were still in the room, but Jamison started
a conversation with him to prevent him from doing so.  <u>See</u> AAC
¶ 33; FAC ¶ 31.

Anderson and Falkner allege Brown "knew or should have
known" that Barkley should not be alone in a room with female
inmates and that doing so was a violation of the WVDCR code of
conduct and other policies.  AAC ¶¶ 35-36; <u>accord</u> FAC ¶¶ 34-35.
They allege Brown knew or should have known that Barkley "was
committing inappropriate conduct, including sexual assault,
sexual harassment, sexual abuse, and rape," and that he had an
affirmative duty to report Barkley's violation in writing to his
supervisors.  AAC ¶¶ 37–38; <u>accord</u> FAC ¶¶ 36-37.  Despite his
knowledge, Anderson and Falkner allege that Brown "knowingly and

deliberately ignored the situation and failed to report . . .
Barkley to [his] supervisors." See AAC ¶ 38; accord FAC ¶ 37.

Based on these allegations, the amended complaints
assert claims against Brown for: (1) cruel and unusual
punishment in violation of the Eighth Amendment and Fourteenth
Amendment pursuant to 42 U.S.C. § 1983;[3] (2) cruel and unusual
punishment in violation of Article III, Section 5 of the West
Virginia constitution; (3) battery; (4) assault; (5) intentional
infliction of emotional distress; and (6) civil conspiracy.  See
AAC ¶¶ 52-71; FAC ¶¶ 49-68.  Both amended complaints seek
compensatory and punitive damages, see AAC at 15; FAC at 14, but
only up to the amount of "coverage afforded by applicable
liability insurance policies," AAC ¶ 1; accord FAC ¶ 1.

Brown filed Fed. R. Civ. P. 12(b)(6) motions to
dismiss the complaints as to him.[4]  See Anderson, ECF No. 80;

---

[3] As part of their § 1983 claims, Anderson and Falkner also
allege that they were unconstitutionally deprived of their
"liberty interests, bodily integrity, right to equal protection
of law and right to due process, and right to be protected from
discrimination at the hands of [WVDCR] staff based upon [their]
gender."  See AAC ¶ 54; FAC ¶ 51.

[4] Brown also argues in passing that Falkner's claims against him
should be dismissed pursuant to Fed R. Civ. P 12(b)(1) for lack
of subject-matter jurisdiction.  However, Brown does not develop
this point in his motion or briefing.

<u>Falkner</u>, ECF No. 84.  The motions have been fully briefed and are ready for disposition.

## II.  Legal Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleader provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  The purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of a complaint.  <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 243 (4th Cir. 1999).

Specific facts are not necessary in a pleading, "but only enough facts to state a claim to relief that is plausible on its face."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  The pleading "must give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  <u>Id.</u> at 555 (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)); <u>see also</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (explaining that the Rule 8 pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Twombly, 550 U.S. at 572).  However, the court is not required to accept as true the legal conclusions set forth in a complaint.  Edwards, 178 F.3d at 244.  The motion should only be granted if, "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief."  Id.

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  See Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).  To contain sufficient factual matter to make a claim plausible, the factual allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

### III. Discussion

Defendant Brown moves to dismiss all the claims against him in both cases pursuant to Rule 12(b)(6) for failure to state a claim for which relief can be granted.  <u>See</u> <u>Anderson</u>, ECF No. 81 ("Anderson Mem.") at 1; <u>Falkner</u>, ECF No. 85 ("Falkner Mem.") at 1.  The court addresses his arguments in turn.

### A.  <u>Eleventh Amendment Immunity</u>

Brown first argues that the claims against him in his official capacity should be dismissed on the ground that he is immune from such claims under the Eleventh Amendment.  <u>See</u> Anderson Mem. at 4 (citing <u>Kentucky v. Graham</u>, 473 U.S. 159 (1985); <u>Brandon v. Holt</u>, 469 U.S. 464 (1985)).  The plaintiffs do not contest the issue.

Claims against state officials in their capacity as officials are generally treated as claims against the state. <u>See</u> <u>Hafer v. Melo</u>, 502 U.S. 21, 27 (1991); <u>Graham</u>, 473 U.S. at 165-66.  Absent the state's waiver or consent, "[t]he Eleventh Amendment immunizes states from suits seeking money damages," and thus it also bars such suits "against a public servant in his official capacity."  <u>Adams v. Ferguson</u>, 884 F.3d 219, 224 (4th Cir. 2018) (quotation marks omitted) (quoting <u>Brandon</u>, 469 U.S. at 471–72); <u>see also</u> <u>Pennhurst State Sch. & Hosp. v.</u>

Halderman, 465 U.S. 89, 117–21 (holding Eleventh Amendment
immunity applies to pendent state-law claims).

      Here, there appears no dispute that Brown, in his
official capacity, is an officer of a state agency and is thus,
absent waiver or consent, entitled to Eleventh Amendment
immunity.  See Jeffers v. W. Va. Div. of Corr. & Rehab., No.
3:19-cv-00462, 2020 WL 521851, at *4 (S.D.W. Va. Jan. 31, 2020)
(holding "correction officers" employed by WVDCR are "immune
from suit in federal court in their official capacities" because
they are "employed by an arm of the state and [are] sued in
[their] official capacity").  There is also no dispute that the
plaintiffs seek monetary damages for the claims asserted against
Brown.

      However, a state may voluntarily waive Eleventh
Amendment immunity by statutorily waiving sovereign immunity
with respect to certain claims brought in its own courts, being
sued for such a claim in its own court, and removing that case
from state court to federal court.  See Lapides v. Bd. of
Regents, 535 U.S. 613, 618–24 (2002); Stewart v. North Carolina,
393 F.3d 484, 488–90 (4th Cir. 2005).  That appears to be what
has happened here.  By statute, West Virginia has enacted an
exception to its sovereign immunity, such that "'[s]uits . . .
alleg[ing] that recovery is sought under and up to the limits of

the State's liability insurance coverage, fall outside the traditional constitutional bar to suits against the State.'" Syl. pt. 4, W. Va. Lottery v. A-1 Amusement, Inc., 807 S.E.2d 760, 761 (W. Va. 2017) (quoting Syl. pt. 2, Pittsburgh Elevator Co. v. W. Va. Bd. of Regents, 310 S.E.2d 675, 676 (W. Va. 1983)).  The plaintiffs have expressly restricted the recovery they seek to the amounts of any applicable insurance policy limits and thus were not barred from pursuing their claims in West Virginia state courts.  Defendant WVDCR consented to removal of both cases to this court, along with the then other named defendants.  See Anderson, ECF No. 1 at 1, 3; Falkner, ECF No. 1 at 1, 3.  Thus, West Virginia has waived its sovereign immunity in these cases, and, consequently, Brown is not protected by Eleventh Amendment immunity and is subject to suit in his official capacity.  See Spry v. West Virginia, No. 2:16-cv-01785, 2017 WL 440733, at *13 n.10 (S.D.W. Va. Feb. 1, 2017) (employing same analysis); Bosley v. Lemmon, No. 3:07-cv-142, 2008 WL 11451630, at *2 (N.D.W. Va. Sept. 17, 2008) (same).

B.   Qualified Immunity

        Brown next argues that he is entitled to qualified immunity for the § 1983 claims as well as all the state-law claims.  This argument thus implicates two qualified-immunity

doctrines: one with respect to the federal claim and one with respect to the state-law claims.

(1)  Section 1983 claim

Under federal law, qualified immunity only applies to Brown in his individual capacity.  See <u>Kentucky</u>, 473 U.S. 166-67.  "'Qualified immunity shields federal and state officials individually from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.'"  <u>Fauconier v. Clarke</u>, 966 F.3d 265, 280 (4th Cir. 2020) (internal quotation marks and brackets omitted) (quoting <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 735 (2011)).  "[F]or a right to be clearly established, it must be 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'"  <u>Id.</u> (quoting <u>Mullenix v. Luna</u>, ___ U.S. ___, 136 S. Ct. 305, 308 (2015)).

The court concludes that the amended complaints sufficiently plead facts showing that Brown violated Anderson's and Falkner's Eighth Amendment rights.  The Eighth Amendment prohibits "cruel and unusual punishments," U.S. Const. amend. VIII, and thus requires "reasonable protection against unreasonable risk of harm in a prison environment."  <u>Hite v.</u>

<u>Leeke</u>, 564 F.2d 670, 673 (4th Cir. 1977).  "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment."  <u>Farmer v. Brennan</u>, 511 U.S. 825, 828 (1994).  To be liable for deliberate indifference, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  <u>Id.</u> at 837.  "[A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm."  <u>Id.</u> at 842.

Because "gratuitously allowing" prisoners to be "beat[en] or rap[ed] . . . serves no legitimate penological objective," <u>Farmer</u>, 511 U.S. at 833 (internal quotation marks and brackets omitted), under the Eighth Amendment, "prisoners have a right to be free from sexual abuse, whether at the hands of fellow inmates or prison guards." <u>Jackson v. Holley</u>, 666 F. App'x 242, 244 (4th Cir. 2016) (per curiam) (quoting <u>Austin v. Terhune</u>, 367 F.3d 1167, 1171 (9th Cir. 2004)); <u>see Boxer X v. Harris</u>, 437 F.3d 1107, 1111 (11th Cir. 2006) ("[S]evere or repetitive sexual abuse of a prisoner by a prison official can violate the Eighth Amendment."), <u>abrogated on other grounds by</u>

Wilkins v. Gaddy, 559 U.S. 34 (2010), as recognized by Sconiers
v. Lockhart, 946 F.3d 1256 (11th Cir. 2020); id. (collecting
cases from Second, Eighth, and Tenth Circuits).  Thus, prison
officials violate the Eighth Amendment by being deliberately
indifferent to the substantial risk that a prisoner will be
sexually assaulted by other prisoners.  See Doe v. Roe, 907 F.2d
1137, 1990 WL 86285, at *3 (4th Cir. 1990) (unpublished table
decision); see also Howard v. Waide, 534 F.3d 1227, 1235–41
(10th Cir. 2008); Spruce v. Sargent, 149 F.3d 783. 785–87 (8th
Cir. 1998); Roland v. Johnson, 856 F.2d 764, 769–70 (6th Cir.
1988); Villante v. Dep't of Corr., 786 F.2d 516 (2d Cir. 1986);
Riley v. Jeffes, 777 F.2d 143, 146 (3d Cir. 1985); Leonardo v.
Moran, 611 F.2d 397, 398–99 (1st Cir. 1979); Little v. Walker,
552 F.2d 193, 197 (7th Cir. 1977).  A violation likewise occurs
when prison officials are deliberately indifferent to the
substantial risk that a prisoner will be sexually assaulted by
prison officials.  See Castillo v. Day, 790 F.3d 1013, 1020
(10th Cir. 2015); Beers-Capitol v. Whetzel, 256 F.3d 120, 142
n.15 (3d Cir. 2001); Daskalea v. District of Columbia, 227 F.3d
433, 441–42 (D.C. Cir. 2000).

        Here, the amended complaints sufficiently plead facts
from which the court can reasonably infer that Brown was
deliberately indifferent to the substantial risk that Anderson

and Falkner would be sexually assaulted by Barkley.  They allege
that Barkley's pattern of sexually abusing female prisoners was
so well known to other WVDCR officials that he had been
reprimanded and removed from supervising female prisoners for a
time, and they further allege that Barkley sexually abused
female prisoners openly, in front of Brown.  From these
allegations, it is reasonable to infer that Brown was aware that
Barkley posed a substantial risk of serious harm to female
prisoners.  The complaints plausibly allege that, despite
Brown's knowledge of the threat posed by Barkley, he failed to
prevent Barkley from entering the laundry storage room with
Anderson and Falkner and thus allowed them to be exposed to a
substantial risk of serious harm.

        Brown attempts to avoid this conclusion by arguing
that the amended complaints do not indicate that he "was aware
that . . . Barkley had a propensity to commit sexual assault or
act inappropriately towards inmates" and thus that "[t]here is
no clearly established federal constitutional or statutory
authority that a reasonable official would have known that he
violated in failing to prevent another correctional officer from
entering a room where a female inmate is present."  Anderson
Mem. at 7-8; accord Falkner Mem. at 7-8.  This argument ignores
the amended complaints' allegations that Barkley's conduct was

16

well-known to prison officials and that Barkley had previously engaged in this conduct openly in front of Brown.

Brown also attempts to avoid this conclusion by characterizing his own conduct as nothing more than failing to respond to a violation of WVDCR's policies that prohibit male prison officials from being alone with female prisoners. He argues that alleged violations of WVDCR policies are not tantamount to a deprivation of a clearly established constitutional right. The court declines this characterization of the amended complaints' allegations. Viewed in the light favorable to plaintiffs, the amended complaints allege that Brown violated Anderson's and Falkner's rights through his deliberate indifference to the substantial threat of sexual assault posed by Barkley, not merely that he violated WVDCR policy. The amended complaints do not assert a theory of liability premised on the violation of policy; instead, the existence of the policies support the reasonable inference that Brown and his co-defendants were aware of risks arising from male prison officials, like Barkley, being left alone with female prisoners.

The court also concludes that it is clearly established that a prison official's deliberate indifference to a substantial risk that a prisoner will be subjected to sexual

17

abuse by another prison official violates the Eighth Amendment. Although the Fourth Circuit does not appear to have directly addressed this specific issue, the court's conclusion follows from the Supreme Court's pronouncements that the Eighth Amendment is violated when prison officials are deliberately indifferent to a substantial risk that prisoners will be sexually assaulted.  See Farmer, 511 U.S. at 832–34.  Further, the court notes that the Fourth Circuit, in an unpublished opinion, as well as nearly every other circuit, has held that a prison official's deliberate indifference to a substantial risk that a prisoner will be sexually abused by another prisoner violates the Eighth Amendment.  See cases cited supra at 15. The court sees no meaningful distinction between the deliberate indifference shown to such a risk posed by a prisoner and one posed by a prison official:  Neither "serves [a] legitimate penological objective" or is "part of the penalty that criminal offenders pay for their offense against society."  Farmer, 511 U.S. at 833–34 (internal quotation marks and brackets omitted). Notably, courts that have concluded that deliberate indifference to the risk of sexual assault committed by prison officials is a clearly established violation of the Eighth Amendment have relied on Farmer's pronouncement and previous rulings that such deliberate indifference violates the Eighth Amendment when the

threat is posed by another prisoner.  See Castillo, 790 F.3d at 1020; Beers-Capitol, 256 F.3d at 142 n.15.

Because the amended complaints sufficiently plead facts supporting a reasonable inference that Brown violated Anderson's and Falkner's clearly-established Eighth Amendment rights, Brown is not entitled to qualified immunity at this stage.[5]

(2)  Section 5 claim

Brown next argues that he is entitled to qualified immunity with respect to the claims that he violated Article III, Section 5 of the West Virginia constitution.[6]  Like the Eighth Amendment, Section 5 prohibits "cruel and unusual

---

[5] The court declines to address Brown's assertion of qualified immunity with respect to the § 1983 claims to the extent they premise liability on a substantive due process theory because the plaintiffs may not rely on that theory.  See Albright v. Oliver, 510 U.S. 266, 273 (1994) ("Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" (internal quotation marks omitted) (quoting Graham v. Connor, 490 U.S. 386, 394 (1989)).  The court also declines to address qualified immunity for the plaintiffs' claims to the extent they are premised on the Equal Protection Clause because the parties do not address the issue in their briefing.

[6] Brown asserts qualified immunity with respect to the remaining state-law claims as well.  Because the court concludes that those claims should be dismissed for the reasons stated infra, the court addresses qualified immunity only with respect to the Section 5 claims.

punishments," W. Va. Const. art. III, § 5.  The West Virginia
Supreme Court of Appeals views Section 5 as a "counterpart" to
the Eighth Amendment, State v. Vance, 262 S.E.2d 423, 432 (W.
Va. 1980), as they "originate[] in the same tradition," State ex
rel. Harris v. Calendine, 233 S.E.2d 318, 330 (W. Va. 1977); see
also State ex rel. Pingley v. Coiner, 186 S.E.2d 220, 230–34
(merging analysis of cruel and unusual punishment under Eighth
Amendment and Section 5 in condition-of-confinement context).
Thus, as under the Eighth Amendment, a prison official violates
Section 5 by being deliberately indifferent to a substantial
risk that a prisoner will be subjected to sexual assault.  See
Hackl v. Dale, 299 S.E.2d 26, 28–29 (W. Va. 1982).

        Federal courts apply a state's qualified-immunity
doctrine to claims arising under state law.  See Pegg v.
Herrnberger, 845 F.3d 112, 121 (4th Cir. 2017).  "Under West
Virginia law, in order to determine whether qualified immunity
applies . . . , the 'court must determine whether [the officer]
has demonstrated that discretionary acts or omissions are in
violation of clearly established statutory or constitutional
rights or laws of which a reasonable person would have known or
are otherwise fraudulent, malicious, or oppressive.'"  Ballock
v. Costlow, 430 F. Supp. 3d 146, 166 (N.D.W. Va. 2019) (brackets

and alteration omitted) (quoting State v. Chase Sec., Inc., 424
S.E.2d 591, 599–600 (W. Va. 1992)).

The West Virginia Supreme Court of Appeals does not
appear to have expounded on the availability of qualified
immunity in the context of a claim that a prison official's
deliberate indifference to a substantial risk of serious harm
violates a prisoner's rights under Section 5.  However, "'West
Virginia's approach to matters concerning immunity historically
has followed federal law.'"  Weigle v. Pifer, 139 F. Supp. 3d
760, 775 (S.D.W. Va. 2015) (quoting City of Saint Albans v.
Botkins, 719 S.E.2d 863, 868 (W. Va. 2011)).  Applying here the
same analysis regarding Brown's assertion of qualified immunity
under § 1983, the court concludes that Brown is not entitled to
qualified immunity with respect to the Section 5 claims.  See
Ballock, 430 F. Supp. 3d at 166–67 (merging qualified-immunity
analysis for claims under federal and state constitutions).[7]

---

[7] Although Brown does not appear to raise the issue explicitly,
to the extent his briefing might be read to do so, the court
notes that, when the complaint is read in the light most
favorable to the plaintiffs, Brown had sufficient opportunity to
prevent Barkley from entering the laundry storage room or to
otherwise intervene notwithstanding the brevity of the alleged
sexual assault.

C.   <u>Pleading requirements</u>

Next, Brown argues that each of the claims raised in the amended complaints should be dismissed because they do not meet the pleading requirements of Rules 8 and 12(b)(6).  The court addresses the claims in turn.

(1)   Section 1983 claim

As explained above, both of the amended complaints sufficiently allege that Brown violated Anderson's and Falkner's Eighth Amendment rights.  To the extent Brown argues that the § 1983 claim should be dismissed for failing to state a claim, the court rejects the argument.

(2)   Section 5 claim

Brown argues that the claims for cruel and unusual punishment in violation of Article III, Section 5 of the West Virginia constitution should be dismissed because this court has previously ruled that monetary damages are not available for state constitutional violations.  <u>See</u> Anderson Mem. at 9 (citing <u>S.M.B. v. W. Va. Reg'l Jail</u>, No. 3:17-cv-1300, 2017 WL 3841894, at *4-5 (S.D.W. Va. Sept. 1, 2017)); Falkner Mem. at 9 (same).

The West Virginia Supreme Court of Appeals has not expressly recognized a private cause of action to seek damages

for violations of Section 5.  In Harrah v. Leverette, 271 S.E.2d

322 (W. Va. 1980), the court held that other remedies are

available for alleged violation of an Article III right:

> A person brutalized by state agents while in jail or prison may be entitled to:
>
> (a)  A reduction in the extent of his confinement or his time of confinement;
>
> (b)  Injunctive relief, and subsequent enforcement by contempt proceedings, including but not limited to, prohibiting the use of physical force as punishment, requiring psychological testing of guards, and ordering guards discharged if at a hearing they are proved to have abused inmates;
>
> (c)  A federal cause of action authorized by 42 U.S.C. § 1983; and
>
> (d)  A civil action in tort.

Syl. pt. 4, Harrah, 271 S.E.2d at 324.  Notably, the Harrah

court did not expressly foreclose the possibility of a suit for

damages for a Section 5, or other Article III, violation.  And,

the court later recognized a private cause of action "where a

municipality or local governmental unit causes injury by denying

[a] person rights that are protected by the Due Process Clause

embodied within Article 3, § 10 of the West Virginia

Constitution."  Hutchison v. City of Huntington, 479 S.E.2d 649,

654 (W. Va. 1996).

Based on the holdings of Harrah and Hutchison, federal

district courts in West Virginia have held that damages are not

available for violations of the state constitution, including

for violations of Section 5.  See, e.g., Nutter v. Mellinger,

No. 2:19-cv-00787, 2020 WL 401790, at *6 (S.D.W. Va. Jan. 23, 2020) (Goodwin, J.); <u>Langley v. Arresting Officer</u>, No. 3:17-cv-3520, 2018 WL 4560208, at *4 (S.D.W. Va. Sept. 21, 2018) (Chambers, J.); <u>Jones v. White</u>, No. 5:17-cv-100, 2018 WL 2708750, at *7 (N.D.W. Va. June 5, 2018) (Stamp, J.); <u>Howard v. Ballard</u>, No. 2:13-cv-11006, 2015 WL 1481836, at *4 (S.D.W. Va. Mar. 31, 2015) (Johnston, J.); <u>Smoot v. Green</u>, No. 2:13-cv-10148, 2013 WL 5918753, at *4 (S.D.W. Va. Nov. 1, 2013) (Copenhaver, J.).  Recently, however, some federal courts have found reason to believe that the Supreme Court of Appeals would recognize a private cause of action for damages for violations of constitutional rights, including under Article III, Section 5.  <u>See, e.g.</u>, <u>Davis v. Milton Police Dep't</u>, No. 3:20-cv-0036, 2020 WL 2341238, at *6 (S.D.W. Va. May 11, 2020) (Chambers, J.); <u>Cummings v. City of Wheeling</u>, No. 5:19-cv-271, 2019 WL 6609693, at *5 (N.D.W. Va. Dec. 5, 2019) (Stamp, J.); <u>Spry</u>, 2017 WL 440733, at *9 (Johnston, J.).  The courts in these latter cases have not determined whether such a cause of action exists but have instead expressed an interest in certifying the question to the Supreme Court of Appeals.  <u>See, e.g.</u>, <u>Davis</u>, 2020 WL 2341238, at *6; <u>Cummings</u>, 2019 WL 6609693, at *5; <u>Spry</u>, 2017 WL 440733, at *9.

Whether a private cause of action for damages exists for violations of Section 5 remains an unsettled question.  Due to the unsettled state of the law, and noting that the plaintiffs have otherwise stated a plausible claim for relief under § 1983, which would be analogous to their Section 5 claim, the court will allow the Section 5 claim to continue.  See Spry, 2017 WL 440733, at *9.  Should the plaintiffs in these actions continue to pursue the Section 5 claim, a certified question to the Supreme Court of Appeals may be appropriate.  See id.  In the meantime, however, the court declines to decide the issue and accordingly denies Brown's motions to dismiss the Section 5 claims.

(3)  Intentional Infliction of Emotional Distress

To prevail on a claim for intentional infliction of emotional distress ("IIED"), the plaintiff must establish four elements:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Syl. pt. 3, <u>Travis v. Alcon Labs., Inc.</u>, 504 S.E.2d 419, 421 (W. Va. 1998).  The alleged conduct for the first element "must be more than unreasonable, unkind or unfair; it must truly offend community notions of acceptable conduct." <u>Id.</u> at 425 (quoting <u>Grandchamp v. United Air Lines, Inc.</u>, 854 F.2d 381, 383 (10th Cir. 1988)).  "[C]onduct that is merely annoying, harmful of one's rights or expectations, uncivil, mean-spirited, or negligent does not constitute outrageous conduct." <u>Courtney v. Courtney</u>, 413 S.E.2d 418, 423 (W. Va. 1991).

Brown argues that the plaintiffs have failed to allege that he engaged in conduct so extreme and outrageous as to exceed the bounds of decency.  <u>See</u> Anderson Mem. at 17–19; Falkner Mem. at 17–19.  The court agrees.  Brown's conduct may have been deliberately indifferent, but his conduct does not constitute outrageous conduct for the purposes of an IIED claim. <u>See</u> <u>Courtney</u>, 413 S.E.2d at 423.  Moreover, the amended complaints contain no allegation that Brown acted with the intent to cause Anderson and Falkner to suffer emotional distress, and, to the extent that they allege he acted recklessly, the amended complaints do not allege that he did so when it was certain or substantially certain that emotional distress would result.  <u>See</u> <u>Travis</u>, 504 S.E.2d at 421.  The IIED claims against Brown therefore must be dismissed.

(4)   Remaining State-Law Claims

Brown lastly argues that the amended complaints fail to allege facts supporting the plaintiffs' claims for battery, assault, and civil conspiracy.  The plaintiffs do not contest the motions with respect to the claims for battery and assault.

In West Virginia, a person is liable for battery if: "(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results." W. Va. Fire & Cas. Co. v. Stanley, 602 S.E.2d 483, 494 (W. Va. 2004) (quoting Restatement (Second) of Torts § 13 (1965)).  A person is liable for assault if: "(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) the other is thereby put in such imminent apprehension." Id. at 495 (quoting Restatement (Second) of Torts § 21 (1965)).

As Brown points out, the amended complaints fail to include any allegation that he acted with the requisite intent for battery or assault.  The claims for battery and assault against Brown therefore must be dismissed.

27

The amended complaints allege that the defendants, including Brown, as well as "other staff[,] . . . engaged in a course of conduct which was willful, conspiratory and intended to deny Plaintiff[s] certain rights guaranteed by the Constitution of the United States and of this State, federal statutes, state statutes and the common law of West Virginia." AAC ¶ 63; accord FAC ¶ 60.  They also allege that the defendants' actions were "in furtherance of a civil conspiracy," the purpose of which was "to avoid a criminal investigation by federal, state and local law enforcement officials as to the sexual exploitation of Plaintiff by Defendant Barkley and to engage in retaliation against Plaintiff and otherwise conspire." See AAC ¶ 64; FAC ¶ 61.

The amended complaints do not specify whether the conspiracy claims are brought under West Virginia law or 42 U.S.C. § 1985(3).  Under West Virginia law, "[a] civil conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means."  Syl. pt. 8, Dunn v. Rockwell, 689 S.E.2d 255, 259 (W. Va. 2009).  "A civil conspiracy is not a per se, stand-alone cause of action; it is instead a legal doctrine under which liability for a tort may be imposed on people who did not actually commit a tort

themselves but who shared a common plan for its commission with the actual perpetrator(s)."  Syl. pt. 9, <u>Dunn</u>, 689 S.E.2d at 259.  To establish a claim for a conspiracy under § 1985(3), a plaintiff must prove five elements:

> (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

<u>Simmons v. Poe</u>, 47 F.3d 1370, 1376 (4th Cir. 1995). Additionally, the plaintiff must show an agreement, or a "meeting of the minds," between the defendants to violate her rights.  <u>Id.</u> at 1377.

Brown argues that the plaintiffs' amended complaints do not identify any overt act he took in concert with another in furtherance of a conspiracy to deprive Anderson or Falkner of their constitutional rights.  <u>See</u> Anderson Mem. at 20; Falkner Mem. at 20.  Brown also argues that the plaintiffs have not pled factual allegations to support a meeting of the minds to give rise to a conspiracy claim.  <u>See</u> Anderson Mem. at 20; Falkner Mem. at 20.  The court agrees.

The amended complaints contain nothing more than conclusory statements that Brown engaged in "conspiratory" conduct and committed "acts in furtherance of a civil

29

conspiracy." AAC ¶¶ 63-64; accord FAC ¶¶ 60-61. Neither amended complaint alleges facts to show an agreement between parties or anything resembling a conspiracy. The alleged conspiracy is not mentioned until the listing of causes of action, which is entirely based on conclusory allegations unsupported by concrete facts. See A Soc'y Without A Name v. Virginia, 655 F.3d 342, 347 (4th Cir. 2011) (affirming the dismissal of a conspiracy claim at the motion to dismiss stage because the allegations were "a bare assertion of a conspiracy" and "insufficient to support a meeting of the minds by the defendants"). Accordingly, the conspiracy claims against Brown must be dismissed.

### IV. Conclusion

For the foregoing reasons, it is ORDERED that Brown's motions to dismiss (Anderson, ECF No. 80; Falkner, ECF No. 84) be, and they hereby are, denied in part and granted in part. Specifically, the state-law claims of battery, assault, intentional infliction of emotional distress, and civil conspiracy against Brown are dismissed. The motions to dismiss are denied in all other respects.

The Clerk is directed to transmit copies of this memorandum opinion and order to all counsel of record and any unrepresented parties.

ENTER: September 30, 2020

John T. Copenhaver, Jr.
Senior United States District Judge