```
            UNITED STATES DISTRICT COURT
          SOUTHERN DISTRICT OF WEST VIRGINIA
                    AT CHARLESTON
```

**BRENDA ANDERSON, Administratrix of the Estate of Kimberly Anderson,**

    Plaintiff,

v.                                 Civil Action No. 2:19-cv-00198

**NATHANIEL BARKLEY**, individually and in his official capacity as a correctional officer of the West Virginia Division of Corrections and Rehabilitation;

**THE WEST VIRGINIA DIVISION OF CORRECTIONS AND REHABILITATION**, an agency of the State of West Virginia;

**JAMES E. JAMISON**, individually and in his official capacity as a correctional officer of The West Virginia Division of Corrections and Rehabilitation;

**DEVIN M. BROWN**, individually and in his official capacity as a correctional officer of The West Virginia Division of Corrections and Rehabilitation;

**SGT. ROBERTA M. EVANS**, individually and in her official capacity as a correctional officer of The West Virginia Division of Corrections and Rehabilitation;

**SGT. MARK A. GOODMAN**, individually and in his official capacity as a correctional officer of The West Virginia Division of Corrections and Rehabilitation;

**ADMINISTRATOR DEBRA MINNIX**, individually and in her official capacity as administrator of The West Virginia Division of Corrections and Rehabilitation; and

**JOHN DOE**, unknown person or persons, individually and in their official capacity as correctional officers of the West Virginia Division of Corrections and Rehabilitation,

       Defendants.

KARA FALKNER,

       Plaintiff,

v.                               Civil Action No. 2:19-cv-00199

**NATHANIEL BARKLEY**, individually and in his official capacity as a correctional officer of the West Virginia Division of Corrections and Rehabilitation;

**THE WEST VIRGINIA DIVISION OF CORRECTIONS AND REHABILITATION**, an agency of the State of West Virginia;

**JAMES E. JAMISON**, individually and in his official capacity as a correctional officer of The West Virginia Division of Corrections and Rehabilitation;

**DEVIN M. BROWN**, individually and in his official capacity as a correctional officer of The West Virginia Division of Corrections and Rehabilitation;

**SGT. ROBERTA M. EVANS**, individually and in her official capacity as a correctional officer of The West Virginia Division of Corrections and Rehabilitation;

**SGT. MARK A. GOODMAN**, individually and in his official capacity as a correctional officer of The West Virginia Division of Corrections and Rehabilitation;

**ADMINISTRATOR DEBRA MINNIX**, individually and in her official capacity as administrator of The West Virginia Division of Corrections and Rehabilitation; and

**JOHN DOE**, unknown person or persons, individually and in their official capacity as correctional officers of the West Virginia Division of Corrections and Rehabilitation,

       Defendants.

MEMORANDUM OPINION AND ORDER

Pending are defendant Nathanial Barkley's motions for summary judgment filed in the related above-styled cases on April 6, 2020 (Anderson v. Barkley, No. 2:19-cv-00198, ECF No. 102; Falkner v. Barkley, No. 2:19-cv-00199, ECF No. 93).

I. Background

The original plaintiffs, Kimberly Anderson[1] and Kara Falkner, initiated separate civil actions against the West Virginia Division of Corrections and Rehabilitation ("WVDCR"), Barkley, in his individual capacity and official capacity as a WVDCR correctional officer, and other named and unnamed WVDCR officials, individually and in their official capacities. See Anderson, ECF No. 1; id., ECF No. 47 (Anderson Amended Complaint, hereinafter, "AAC"); Falkner, ECF No. 1 at 2; id., ECF No. 53 (Falkner Amended Complaint, hereinafter, "FAC").

With respect to Barkley, the plaintiffs' operative amended complaints allege the following. Anderson and Falkner were female inmates residing at Tygart Valley Regional Jail in Randolph County, West Virginia. See AAC ¶ 2; FAC ¶ 2. Barkley,

---

[1] Brenda Anderson, the administratrix of the estate of the original plaintiff, Kimberly Anderson, was substituted as the plaintiff in No. 2:19-cv-00198 following Kimberly's death. See Anderson, ECF No. 122.

3

a correctional officer at Tygart Valley, "acted inappropriately with the female inmates at [Tygart Valley], including committing sexual assault, sexual harassment, sexual abuse, sexual exploitation, and other illegal, threatening, or oppressive behavior." AAC ¶ 19; FAC ¶ 19. Together, Anderson and Falkner allege that Barkley "sexually assaulted [them], sexually harassed [them], sexually abused [them], threatened [them] and oppressed [them] under threat of retaliation" on several occasions. AAC ¶ 25; FAC ¶ 25; see AAC ¶¶ 26–27.

First, on March 27, 2017, when Anderson was alone in her cell while other inmates were receiving medication, Barkley "pulled down [her] pants and commented 'nice ass.'" AAC ¶ 26. Second, on March 28, 2017, Barkley entered Anderson's cell, requested that Anderson enter the cell with him under the pretext of inspecting a leaky toilet, "then grabbed Anderson, threw her up against the cell wall[,] and sexually assaulted her, by putting his hands down her pants and inserting his finger into her vagina." Id. ¶ 27. Third, on April 1, 2017, while in the booking area, Barkley ordered Anderson and Falkner into a laundry storage room, where he "cornered [Anderson] and placed her hand on his crotch area on the outside of his pants," "ordered [Anderson] and [Falkner] to kiss and perform sexual acts on each other," and "put his hand down [Anderson]'s pants

4

and inserted his finger into her vagina." Id. ¶¶ 28-30; see FAC ¶¶ 26, 28.

Based on these allegations, the amended complaints assert claims against Barkley, in relevant part, as follows. In Count I, the plaintiffs assert that Barkley's actions amounted to cruel and unusual punishment prohibited by the Eighth Amendment of the United States Constitution and the West Virginia Constitution and deprived them of their "liberty interests, bodily integrity, right to equal protection of law and right to due process, and right to be protected from discrimination." AAC ¶¶ 53-54; accord FAC ¶¶ 50-51. In Count II, the plaintiffs assert that Barkley's conduct was "atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency and so outrageous as to offend community notions of acceptable behavior" and "so severe that no reasonable person could be expected to endure [it]," causing them to "suffer severe emotional distress, giving rise to a claim of compensatory . . . and punitive damages against [him]." AAC ¶¶ 57-59; accord FAC ¶¶ 54-56. And in Count III, the plaintiffs assert causes of action for the "[t]ort[s] of civil battery," "civil assault," and "intentional infliction of

5

emotional distress/outrage." AAC ¶ 61; accord FAC ¶ 58.[2] Both complaints seek monetary damages. AAC at 15; FAC at 14.

Following the close of discovery, Barkley filed the current motions for summary judgment. See Anderson, ECF No. 36; id., ECF No. 102; Falkner, ECF No. 71; id., ECF No. 93. The motions have been fully briefed and are ready for disposition.

## II. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. In deciding a motion for summary judgment, the court must view the evidence and all reasonable inferences drawn therefrom in a light most

---

[2] In Count IV, the plaintiffs assert claims of civil conspiracy against all the defendants except WVDCR. See AAC ¶¶ 62–64; FAC ¶¶ 59–61. In Count V, the plaintiffs assert claims of deliberate indifference against all the defendants except Barkley. See AAC ¶¶ 65–71; FAC ¶¶ 62–68.

favorable to the non-moving party. See Tolan v. Cotton, 572 U.S. 650, 651, 657 (2014) (per curiam).

## III. Discussion

Barkley seeks summary judgment on Count I of both the plaintiffs' complaints to the extent they assert a cause of action for violating the West Virginia Constitution. He also seeks summary judgment on Counts II and III of both complaints to the extent they assert a cause of action for intentional infliction of emotional distress ("IIED") or outrage. Additionally, he seeks summary judgment on Anderson's claims related to the March 27, 2017 incident she describes in her complaint. The court addresses each of these issues in turn.

A. Violation of the West Virginia Constitution

Barkley argues that Count I of the plaintiffs' complaints must be dismissed to the extent it asserts a cause of action under the West Virginia Constitution, because West Virginia does not recognize a private cause of action for money damages for a violation of Article III, Section 5, under which the claim is presumably brought.

After summary-judgment briefing had completed, the West Virginia Supreme Court of Appeals held, in Fields v.

7

Mellinger, \_\_\_ S.E.2d \_\_\_, 2020 WL 7223533 (W. Va. Nov. 18, 2020), that "West Virginia does not recognize a private right of action for monetary damages for a violation of Article III, Section 6 of the West Virginia Constitution." Syl. pt. 3, Fields, 2020 WL 7223533, at *1. Although Fields addressed Section 6, rather than Section 5, of Article III, several facets of the decision strongly suggest that its analysis applies with equal force to Section 5.

Subsequently, all parties in both cases filed stipulations dismissing the claims for violation of the West Virginia Constitution on the grounds that, following the decision in Fields, they are no longer viable. See Anderson, ECF No. 135; Falkner, ECF No. 120. The court thus concludes that Barkley is entitled to summary judgment on Count I of the plaintiffs' complaints to the extent it asserts a cause of action under the West Virginia Constitution.[3]

---

[3] The parties' stipulations purport to dismiss claims for violation of the West Virginia Constitution. The vehicles for effecting voluntarily dismissals are found in Fed. R. Civ. P. 41(a) and Fed. R. Civ. P. 15(a). See Skinner v. First Am. Bank of Va., 64 F.3d 659, 1995 WL 507264 (4th Cir. Aug. 28, 1995) (unpublished table decision). Although, in these circumstances, Rule 41(a) does not permit the dismissal of less than all the claims against a defendant without a court order, see 8 Moore's Federal Practice § 41.21 (2020), it is not clear whether such a dismissal may be effected under Rule 15(a). Accordingly, the court concludes that it is appropriate to dismiss the claims in this memorandum opinion and order.

B.   Intentional Infliction of Emotional Distress

Next, Barkley argues that he is entitled to summary judgment on the plaintiffs' IIED claims in Counts II and III of their complaints. He notes that Count III expressly asserts a cause of action for IIED along with two other intentional torts – assault and battery – and that Count II states the elements of an IIED claim and asserts that his alleged actions satisfies those elements. Compare Syl. pt. 3, Travis v. Alcon Labs., Inc., 504 S.E.2d 419, 421 (W. Va. 1998) (listing elements of IIED claim), with AAC ¶¶ 57-59 (repeating IIED elements), and FAC ¶¶ 54-56. He argues that both IIED claims must be dismissed as a matter of law because they are duplicative of the plaintiffs' assault and battery claims as, under West Virginia law, emotional damages are recoverable under assault and battery claims. The court agrees.

The Supreme Court of Appeals has held that West Virginia "law does not permit a double satisfaction for a single injury . . . simply because [the plaintiff] has two legal theories." Syl. pt. 7, Harless v. First Nat'l Bank, 289 S.E.2d 692, 694 (W. Va. 1982). It has further held that, "[b]ecause an action for assault and battery allows for recovery of damages due to resulting emotional distress, a claim for [IIED] is duplic[ative] of a claim for assault and battery, where both

9

claims arise from the same event." Syl. pt. 4, Criss v. Criss, 356 S.E.2d 620, 620 (W. Va. 1987). Based on these holdings, this court has consistently dismissed IIED claims brought by plaintiffs who also bring assault and battery claims arising from the same underlying events at the motion-to-dismiss and summary-judgment stages. See e.g., Lilly v. Crum, No. 2:19-cv-00189, 2020 WL 1879469, at *6 (S.D.W. Va. Apr. 15, 2020); Pearson v. Thompson, No. 2:19-cv-00321, (S.D.W. Va. Aug. 29, 2019).

The plaintiffs do not dispute that Counts II and III assert claims for intentional (rather than negligent) infliction of emotional distress against Barkley or that the events from which those claims arise also give rise to their complaints' claims for assault and battery. They argue only that they have adequately pled and provided evidence for their IIED claims and that they should be permitted to pursue alternative theories of liability. However, under West Virginia law and the decisions of this court, they are not permitted to do so. See Pearson, 2019 WL 4145613, at *2 ("[T]he Supreme Court of Appeals of West Virginia's decisions in Harless and Criss and the application of the legal principles established in those cases by that Court and this District demonstrate that a plaintiff may not plead

10

claims that give rise to duplicative damages even at the motion to dismiss stage.").

Accordingly, Barkley is entitled to summary judgment on Count II of the plaintiffs' complaints and on Count III to the extent Count III asserts an IIED claim.

C. Claims Related to the March 27, 2017 Incident

Lastly, Barkley argues that he is entitled to summary judgment on Anderson's claims relating to the March 27, 2017 incident described in her complaint. Although her complaint's allegations are thin, Anderson provided a more thorough account of the incident in her deposition testimony. She testified that, while she was in her cell, Barkley, standing either outside the cell or in its doorway, asked her to "flash" him. ECF No. 102-1 at 2. Anderson refused, and, when she was either "waiting to go out" or "on [her] way out [of] the cell," Barkley, who was by then standing in the cell's doorway with his right arm inside the cell said, "[s]how me your ass," grabbed the back part of Anderson's pants and underwear with his right hand and pulled them down, exposing her buttocks, and commented "nice ass." Id. at 2-3. Anderson's pants and underwear were down for "maybe a second or two" before she pulled them back up. Id. at 3.

11

Citing Scott v. Harris, 550 U.S. 372 (2007), Barkley argues he is entitled to summary judgment on claims relating to the March 27, 2017 incident because video footage of the incident that he has provided, see ECF No. 102-2, "clearly contradicts [Anderson]'s claim that [he] pulled her pants and underwear down exposing her bare buttocks," ECF No. 103 at 8.

As Barkley acknowledges, courts "are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion," in this case, the plaintiff. Scott, 550 U.S. at 378 (internal quotation marks and brackets omitted). However, "when documentary evidence," such as video footage, "'blatantly contradicts' a plaintiff's account 'so that no reasonable jury could believe it,' a court should not credit the plaintiff's version on summary judgment." Witt v. W. Va. State Police, Troop 2, 633 F.3d 272, 276–77 (4th Cir. 2011) (brackets omitted) (quoting Scott, 550 U.S. at 380). Nonetheless, "Scott does not hold that courts should reject a plaintiff's account on summary judgment whenever documentary evidence, such as a video, [merely] offers some support for a [defendant]'s version of events." Id. at 276 (emphasis in original).

Here, the court is obligated to view the evidence in the light most favorable to Anderson, meaning that the court

12

must credit her testimony that Barkley demanded that she expose herself to him and, after she refused, pulled down her pants and underwear.  If so credited, genuine disputes as to material facts regarding the March 27, 2017 incident would remain, and summary judgment on claims involving the incident would be improper.  The ruling in Scott would upend this result only if the video footage offered by Barkley "blatantly contradicts [Anderson]'s account so that no reasonable jury could believe it."  Witt, 633 F.3d at 276–77 (internal quotation marks omitted).

The video footage does not clearly or blatantly contradict Anderson's account.  The video footage is without sound, so it does not clearly or blatantly contradict Anderson's account of what Barkley said to her.  It shows Anderson enter her cell and then remain out of the camera's view, while Barkley stands just outside the cell or in its doorway, for a total of approximately 22 seconds.  For the last 14 seconds of this period, Barkley's right arm, which is mostly obscured from the camera's view by a wall and Barkley's torso, is inside Anderson's cell and appears to make several up-an-down motions.  The footage thus is entirely consistent with, and certainly does not blatantly contradict, Anderson's version of the events.

13

Accordingly, Barkley is not entitled to summary judgment on any claim or portion thereof based on the video footage he provides.

## IV. Conclusion

For the foregoing reasons, it is ORDERED that:

1. Barkley's motion for summary judgment in <u>Falkner</u> (ECF No. 93) be, and hereby it is, granted;

2. Barkley's motion for summary judgment in <u>Anderson</u> (ECF No. 102) be, and hereby it is, granted to the extent Barkley seeks summary judgment on Anderson's claim for violation of Article III, Section 5 of the West Virginia Constitution in Count I and her claim for intentional infliction of emotional distress in Counts II and III and denied in all other respects;

3. Count I of both the amended complaints in <u>Anderson</u> and <u>Barkley</u> be, and hereby it is, dismissed to the extent it asserts a private cause of action under the Article III, Section 5 of the West Virginia Constitution; and

4. Count II and Count III, to the extent they assert a cause of action for intentional infliction of

emotional distress, of both the amended complaints in Anderson and Falkner be, and hereby they are, dismissed as to Defendant Barkley.

The Clerk is directed to transmit copies of this memorandum opinion and order to all counsel of record and any unrepresented parties.

                              ENTER: December 29, 2020

                              */s/ John T. Copenhaver, Jr.*
                              John T. Copenhaver, Jr.
                              Senior United States District Judge